*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BALDWIN, Minors.

UNPUBLISHED
July 21, 2022

No. 358950
Wayne Circuit Court
Family Division
LC No. 2019-000349-NA

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children, AFB and ALB, under MCL 712A.19b(3)(c)(*i*), (g), and (j).[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The children were removed from respondent's care in February 2019 because respondent and the children's father were both struggling with substance abuse issues. AFB tested positive for the presence of cocaine and opiates when she was born approximately three months earlier. During the proceedings, respondent was offered myriad court-ordered services, including parenting classes, individual therapy with a substance abuse component, random drug screens, Infant Mental Health (IMH) services, and the opportunity to visit her children. Further, she entered inpatient substance abuse treatment twice during the proceedings, but each time relapsed and resumed using drugs. Following a hearing in September 2021, the trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g),

---

[1] Although the court also identified MCL 712A.19b(3)(c)(*ii*) as an additional statutory basis for terminating respondent's parental rights, it did not identify the "other conditions" that supported termination under this ground. Petitioner concedes that termination under § 19b(3)(c)(*ii*) was improper, but it argues, and we agree, that any error in relying on this ground was harmless because the trial court's decision is supported by other statutory grounds for termination.

and (j), and also found that termination of respondent's parental rights was in the children's best interests.[2]

## II. REASONABLE EFFORTS AT REUNIFICATION

Respondent first argues that the trial court erred by terminating her parental rights to the children because the Department of Health and Human Services (DHHS) failed to make reasonable efforts to reunify her with the children. We disagree.[3]

The Legislature "has expressed an unmistakable preference that the DHHS offer services to every parent at risk of losing parental rights." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3. These services generally include assistance with overcoming a drug addiction, psychological evaluations and other mental health supports, and assistance with securing housing and a legal source of income. *Id*. This Court further explained DHHS's obligation to undertake reasonable efforts to reunify a family:

> "Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances[.]" [*In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010)] (cleaned up). Absent aggravating circumstances, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. [*In re Simonetta*, ___ Mich App at ___; slip op at 3-4.]

While the DHHS has a responsibility to undertake reasonable efforts to provide services to support the reunification of the family, a respondent also has a commensurate responsibility to participate in, and benefit from, the services offered. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 3.

---

[2] The court also terminated the parental rights of the children's father, but he is not a party to this appeal.

[3] To properly preserve an argument that DHHS did not provide adequate services to support the goal of reuniting the family, a respondent is required to object or otherwise indicate that the services provided were not adequate. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 2. A review of the record in this case fails to disclose that respondent objected to the case-service plan in the trial court or otherwise challenged the adequacy of the services offered. Accordingly, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting respondent's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "An error has affected a party's substantial rights when there is a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citation omitted).

Respondent argues that she was not provided with the assistance she needed to complete her treatment plan, nor the necessary tools to be successful. Respondent does not elaborate on this argument, other than to allege that DHHS failed to refer her to "specialized substance abuse treatment." However, while faulting the DHHS for not providing "necessary and appropriate services" to meet respondent's individualized needs in a timely fashion, respondent does not explain what additional or different services she believes should have been offered.

The record reflects that DHHS undertook reasonable efforts to provide respondent with necessary and appropriate services to reunify her with her children. The caseworker, Jahada Turner, testified that respondent was referred for parenting classes and individual therapy with a substance abuse component eight times over the course of the proceedings. Instead of fulfilling her commensurate responsibility to participate in services, respondent offered excuses for not consistently participating, including that she was still working on herself, had transportation problems, and was being held back by her unhealthy relationship with respondent-father. The principal barrier to reunification was respondent's substance abuse. Turner explained that respondent attended inpatient rehabilitation twice during the proceedings, but each time after she was released, she relapsed and began abusing substances again. Respondent admitted that she was not fully compliant with participating in parenting classes and individual therapy because she had consistently relapsed and was still abusing drugs. At the time of the termination hearing in September 2021, respondent had just entered inpatient rehabilitation treatment for the third time during the pendency of this case, and while respondent's peer recovery coach testified that respondent was serious about achieving and maintaining sobriety, the record reflects that she had a pattern of continuously abusing substances after being discharged from inpatient treatment. During the 2-1/2 years this case was pending, she never consistently refrained from abusing substances.

Respondent also did not fully comply with the parenting time that she was offered with her children. Turner described her attendance as only partially compliant. Although the visits that respondent attended went well, respondent missed nearly as many visits as she attended, and she gave multiple excuses for not being fully compliant, such as oversleeping, not having transportation, or simply forgetting. Notably, respondent was provided with bus tickets to access court-ordered services, and many of the services were offered over Zoom, which made them easier to access.

In sum, the record reflects that respondent was offered multiple services to assist her in overcoming her substance abuse addiction and overcoming the barriers to reunification, but she did not comply with and participate in these services, which hindered her ability to reunify with her children. The record does not support respondent's argument that DHHS failed to make reasonable efforts to reunify her with her children.

### III. STATUTORY GROUNDS AND BEST-INTERESTS ANALYSIS

Respondent also argues that the trial court erred by finding that clear and convincing evidence supported a statutory ground for termination, and by finding that termination of her parental rights was in the children's best interests. We disagree.[4]

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Termination is proper under MCL 712A.19b(3)(c)(*i*) if (1) more than 182 days have elapsed since the issuance of the initial dispositional order, (2) "[t]he conditions that led to the adjudication continue to exist," and (3) "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

The trial court entered the initial dispositional order on May 24, 2019. The order terminating respondent's parental rights was entered more than two years later on September 23, 2021. The principal condition that led to the children's adjudication was respondent's drug addiction. As part of her treatment plan, respondent was ordered to participate in parenting classes, individual therapy with a substance abuse component, supervised parenting time, random drug screens, IMH therapy, and to obtain and maintain suitable housing and a legal source of income. While this case was pending, respondent entered inpatient drug treatment twice, but, as noted, each time resumed abusing drugs after her discharge. Respondent was also referred for parenting classes and individual therapy eight times during the proceedings, but did not consistently participate in these services, which led to the services being terminated. The individual therapy appointments were conducted online during the COVID-19 pandemic. Respondent was also not compliant with participating in random drug screens, and at the time of the hearing she was still testing positive for the presence of multiple prohibited substances, including cocaine and fentanyl.

Respondent was only partially compliant with her visitation with the children, missing 18 out of 64 scheduled visits before the supplemental petition was filed on May 22, 2020, and missing 58 out of 127 visits after the petition was filed. At the time of the termination hearing in September 2021, respondent had not visited with the children in person since July 2021. Turner also expressed concern that respondent was under the influence of drugs during visits because random drug screens taken after visits were positive for drugs. Respondent also failed to obtain stable and suitable housing for most of the duration of the case. During most of the proceedings she was living with respondent-father in a relationship that respondent conceded was toxic, or living in the home of his mother, which was not appropriate for the children because the mother had her own history with Children's Protective Services. While respondent worked at a hotel and received unemployment benefits during a portion of the proceedings, Turner had not received any proof of respondent's income since the latter part of 2020.

---

[4] The trial court's factual determination regarding the existence of a statutory ground for termination is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). We also review for clear error the trial court's finding that termination of parental rights is in a child's best interests. *In re Atchley*, ___ Mich App at ___; slip op at 6-7. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at ___; slip op at 3 (citation omitted).

-4-

Clear and convincing evidence supports the trial court's finding that the conditions that led to the adjudication, most notably respondent's drug addiction, continued to exist and were not reasonably likely to be rectified within a reasonable period of time considering the children's ages. MCL 712A.19b(3)(c)(*i*). Because only one statutory ground is necessary to terminate parental rights, we decline to address whether termination was appropriate under MCL 712A.19b(3)(g) and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Turning to the children's best interests, MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

The focus of the best-interest inquiry is on the child, rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The following factors may be considered when weighing a child's best interests:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks omitted).]

Preliminarily, the record does not support respondent's assertion that the trial court's decision is "devoid of any discussion as to the [children's] best interests." On the contrary, the trial court stated that respondent had completely failed to meaningfully address her substance abuse addiction, which was the main issue that brought the children into care, and that she was still struggling with her drug addiction at the time of the termination hearing. The court also weighed the children's placement with a relative, their paternal great-grandmother. The trial court considered that the great-grandmother was willing to adopt the children in the context of weighing their need for permanency, stability, and finality, as well as that respondent was still abusing drugs while evaluating the likelihood that respondent would be able to parent the children in the foreseeable future. The court recognized that respondent shared a bond with her daughters, and that when she did visit them, the visits went well. However, respondent also missed a substantial number of visits and the children's IMH therapist testified that ALB would become anxious and nervous when she was on her way to attend visits, and AFB did not have an attachment with either parent. The IMH therapist also stated that the children saw her more often than they saw respondent. The therapist expressed this concern to respondent, who told her that she understood the concern, but respondent continued to not attend IMH therapy visits.

While respondent argues that she should have been given more time to plan, the record reflects that the children had been in care for 2-1/2 years. Moreover, because of the COVID-19 pandemic, the termination hearing was adjourned several times to allow for an in-person hearing, which gave respondent even more time to address the barriers to reunification. Indeed, she had

more than a year after the supplemental petition was filed to further address and overcome the barriers to reunification, but was unsuccessful. On this record, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett